UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW BATTLE et al.,

        Plaintiffs,                      Case No. 22-cv-10783

v.                                         HON. MARK A. GOLDSMITH

GENERAL MOTORS, LLC,

        Defendant.
_____/

**OPINION & ORDER
(1) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO MODIFY THE SCHEDUING ORDER AND TO FILE A FIRST AMENDED COMPLAINT (Dkt. 86),
(2) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (Dkt. 90),
AND (3) GRANTING JOINT MOTION TO STAY ALL PROCEEDINGS (Dkt. 96)**

Plaintiffs—purchasers of new and used vehicles equipped with certain eight-speed transmissions—have filed a class action lawsuit against Defendant General Motors, LLC based on alleged defects to those transmissions (the Hydra-Matic 8L90 and Hydra-Matic 8L45) installed in 2019–2022 model year vehicles. See Compl. ¶ 1 (Dkt. 1). Before the Court are three motions: (i) Plaintiffs' motion to modify the scheduling order and to file a first amended complaint (Dkt. 86), (ii) GM's motion to compel arbitration (Dkt. 90), and (iii) a joint motion to stay all proceedings (Dkt. 96). For the reasons that follow, the Court grants all three motions.[1]

## I. BACKGROUND

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing also includes GM's response to Plaintiffs' motion (Dkt. 88), Plaintiffs' Reply (Dkt. 92), Plaintiffs' response to GM's motion (Dkt. 93), GM's reply (Dkt. 94), and the parties' supplemental brief regarding the joint motion to stay all proceedings (Dkt. 98).

1

Plaintiffs allege that the eight-speed transmissions at issue have a dangerous shift defect, and that GM concealed this defect. Compl. ¶¶ 2–5. Plaintiffs seek to bring suit on behalf of "[a]ll original purchasers or current owners of Class Vehicles who purchased the Vehicles from authorized GM dealers" in California, Michigan, New Jersey, Indiana, and Washington Id. ¶ 321A–E. They bring claims under the applicable state law of where each plaintiff purchased a vehicle. Id. ¶ 321.

Juan Castaneda—a named plaintiff in the class action—alleges that he purchased a new 2021 GMC Canyon containing an 8L90 or 8L45 transmission from Cardinale Oldsmobile GMC Truck, a dealership in Seaside, California. Compl. ¶¶ 19, 243. Castaneda alleges that his vehicle's "transmission exhibited hard shifting, clunking, jerking and vibrating." Compl. ¶ 250. Castaneda executed an agreement with the dealership entitled, "Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision)." See Castaneda Ag. at PageID.375 (Dkt. 15-1) (capitalization modified). The agreement includes the terms under which the dealership financed Castaneda's vehicle purchase. Id. at PageID.375–379. The agreement also contains an arbitration provision that states:

> Any claim or dispute, whether in contract, tort, statute or otherwise <u>(including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute)</u>, between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

Id. at PageID.380 (emphasis added)

GM, a non-party to the arbitration agreements, moves to compel Castaneda's claims to arbitration. Plaintiffs seek leave to modify the scheduling order and to amend their complaint by adding 15 additional plaintiffs from nine states and removing surplus allegations and causes of

2

action. See Pl. Mot. GM only opposes Plaintiffs' motion to the extent that it seeks to add three plaintiffs who have signed agreements to arbitrate, Banessa Canales-Carayhua, Carly Ball, and Robert Krause. See Def. Resp. at 1–2.

Since the filing of these motions, the parties have filed a joint motion to stay all proceedings pending the Sixth Circuit's rulings in two recently granted appeals of certification orders in automotive-defect class actions: In re General Motors LLC, No. 23-11044 (6th Cir. Oct. 23, 2023) and In re Nissan North America, Inc., No. 23-0501 (6th Cir. Oct. 24, 2023). The Court held a status conference to discuss all pending motions on December 27, 2023. At the status conference, all counsel agreed that if the Court were to grant GM's motion to compel, it should make that ruling applicable to any newly added plaintiffs who have signed binding arbitration agreements with GM.

## II. ANALYSIS

This case concerns a "gateway" question of arbitrability—that is, whether GM, a non-party to the contract, can enforce Castaneda's agreement to arbitrate. The parties' dispute centers around who can answer this gateway question. Plaintiffs contend that this Court is the appropriate forum, while GM contends that the gateway question of arbitrability must be decided by an arbitrator. GM has the better of the argument. Because Castaneda's arbitration agreement contains a valid delegation clause that Castaneda has failed to specifically challenge, only an arbitrator can decide the gateway question of arbitrability.

"Generally, when asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute." Swiger v. Rosette, 989 F.3d 501, 505 (6th Cir. 2021). But the Federal Arbitration Act (FAA) "allows parties to agree that an arbitrator, rather than a

3

court, will determine gateway questions of arbitrability" such as the one at issue in this case.[2] Id. (punctuation modified). An agreement to resolve gateway questions of arbitrability through arbitration is commonly known as a delegation clause. Id. As the United States Court of Appeals for the Sixth Circuit has explained, "[t]he practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court, must address the challenge." Becker v. Delek US Energy, Inc., 39 F.4th 351, 355 (6th Cir. 2022).

To be valid, a delegation clause requires "clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability."[3] Swiger, 989 F.3d at 505 (quoting Blanton v. Domino's Pizza Franchising LLC, 962 F.3d 842, 844 (6th Cir. 2020)). In the presence of a delegation clause, the only time a Court can resolve a threshold question of arbitrability is when the delegation clause itself is specifically challenged. Id. at 505–506. A challenge to the delegation clause is specific if it "rest[s], in part, on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole." Becker, 39 F.4th at 356. A challenge to a delegation clause is not specific if the challenge "simply recycle[s] the same arguments that pertain to the enforceability of the agreement as a whole." Id. (punctuation modified). Rather, the challenge must be "specific to language in the delegation provision." Id. at 355.

---

[2] The Federal Arbitration Act (FAA) applies to arbitration agreements in any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. See Swiger, 989 F.3d at 505.

[3] Plaintiffs argue that there is no "clear and unmistakable evidence that Castaneda and [the dealership] ever agreed that any non-parties (such as GM) could commandeer the delegation clause to force disputes unrelated to the financing agreement into arbitration." Pl. Resp. to Def. Mot. at 12. But clear and unmistakable evidence is needed to show the parties' decision to delegate arbitrability, not the parties' intent to allow a non-party to enforce the agreement.

Castaneda states that he "only and specifically challenges the delegation clause nestled within the arbitration provision." Pl. Resp. to Def. Mot. at 11. But "a party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge." See In re StockX Customer Data Sec. Breach Litig., 19 F.4th 873, 885 (6th Cir. 2021). Here, Castaneda challenges the delegation clause "on the grounds that the clause cannot be read to include any dispute related to the vehicle, by non-signatories beyond those identified by the dealership in the agreement (such as GM)." Pl. Resp. to Def. Mot. at 11.

This is not a specific challenge to the delegation clause. Lyman v. Ford Motor Co., a recent case where another judge in this district was faced with facts very similar to these, is particularly informative. No. 21-CV-10024, 2022 WL 856393 (E.D. Mich. Mar. 22, 2022). In Lyman, plaintiffs purchased their vehicles through financing from a credit company pursuant to an agreement containing an identical arbitration provision to the one at issue in this case. Id. at *2. Ford Motor Company, a non-party to the contract, sought to enforce the arbitration agreement against all plaintiffs. Id. at *3–*4. The plaintiffs purported to specifically challenge the delegation clause by arguing that Ford should not be able to compel arbitration because it was not a party to that agreement. Id. The court held that this was not a specific challenge to the delegation clause because it did "not go to the validity of the delegation clauses" and instead went "to the enforceability of the whole arbitration agreement." Id. at *4. The court left the gateway issue of whether Ford could enforce the arbitration agreement for an arbitrator to decide. Id.

The reasoning in Lyman was correct, and the same outcome is required here. Even though Castaneda purports to be challenging the delegation clause specifically, in substance he is challenging the enforceability of the entire arbitration agreement. This holding is consistent with the Sixth Circuit's recent cases explaining that whether a non-party can enforce an arbitration

5

agreement is a question reserved for the arbitrator. See In re StockX, 19 F.4th at 883 (describing the type of challenge brought by Castaneda as "an issue of enforceability" and thus "a question of arbitrability . . . delegated to an arbitrator") (punctuation modified); Becker, 39 F.4th at 356 (finding that plaintiff was compelled to arbitration because the question of whether the non-party could enforce the arbitration agreement was "for an arbitrator to decide").

Because the Court finds that Castaneda's challenge is not specific to the delegation clause, the gateway question of whether GM can compel Castaneda to arbitrate must be decided by an arbitrator. This does not mean that GM, a non-party to Castaneda's contract, can necessarily force Castaneda to arbitrate his claims—it simply reserves that question for arbitration. An arbitrator might still find that the arbitration agreement is unenforceable as to GM.

### IV. CONCLUSION

For the foregoing reasons, the Court grants GM's motion to compel arbitration (Dkt. 90), Plaintiffs' motion to modify the scheduling order and to file a first amended complaint (Dkt. 86), and the parties' joint motion to stay all proceedings (Dkt. 96). Plaintiffs must file an amended complaint within three days. Consistent with the parties' agreement at the December 27, 2023 status conference, this ruling compelling arbitration applies to any newly added plaintiffs who have signed binding arbitration agreements with GM. This case is stayed pending the decision of the Sixth Circuit in the appeals referenced above or until further order of this Court.

SO ORDERED.

Dated: January 4, 2024  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
 United States District Judge

6

7

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 4, 2024.

      s/Kelly Winslow
Case Manager